12565

WHITE v. JOHNSON *ET AL*. SPARTANBURG COUNTY HIGHWAY COMMISSION

(146 S. E., 411)

*Messrs. Lyles, Daniel & Drummond,* for plaintiff,

*Messrs. Nicholls, Wyche & Byrnes,* for defendants,

January 18, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action brought in the original jurisdiction of the Court for injunctive relief.

The facts of the case appear to be as follows: The plaintiff is the owner of a tract of land, in Spartanburg County, fronting for a distance of approximately 3,000 feet on the easterly side of State Highway No. 56, leading from Pauline by way of Cross Anchor to the Laurens County line; this road is the property line separating plaintiff's lands from lands owned by Miller Brothers on the opposite side. The Spartanburg Highway Commission, composed of the defendants in this action, is vested by statute, with authority to locate or relocate and improve the roads of the County, and to condemn property for necessary rights of way and for construction materials. The Commission has decided to partially relocate, widen and surface treat highway No. 56, and in so doing proposes to fix the width of the right of way at 66 feet, both where it follows the old highway and where it is relocated. It contemplates, however, building the traveled roadway, between outer side-ditch banks, only 36 feet wide, leaving, as a part of the right of way, uniform adjacent strips of the width of 15 feet on each side of the completed roadbed. The plaintiff is willing, and has agreed, to give whatever land may be necessary for the construction of the traveled roadway at any width determined upon, including the necessary sloping of cuts, toeing out of spilled fills, etc., but has declined the Commission's request to convey to it a strip 33 feet wide, measuring from the center of the roadway back into his property, as this would take a strip of his land 15 feet wide not included in the actual traveled way. Of course, the Commission expects to obtain a similar strip of 33 feet from the opposite landowners, in order to make up the 66-foot right of way.

Upon the plaintiff's refusal to grant its request, proceedings were instituted by the Commission to condemn the 33-

foot strip of plaintiff's land. This action was then brought to have the commission permanently enjoined from prosecuting such condemnation.

Among other things, the plaintiff alleged that the carrying out of the proposed plan of the Commission would result in inserting a strip of land 15 feet wide between plaintiff's property and the highway, completely shutting him off and destroying any road frontage; that the additional 15-foot strip is not reasonably essential, now or in prospective necessity, to the completion of the relocation, construction, and maintenance of the road, and that through the taking of his property by the defendants plaintiff will suffer irreparable injury.

By way of return, the defendants demurred to the complaint, on the ground that it did not, in the several particulars enumerated, state facts sufficient to constitute a cause of action. They also answered, alleging that a right of way of the width of 66 feet was necessary for the proper construction, operation, control and maintenance of the proposed highway, pleading various reasons and facts in support of this contention, as set out in an affidavit of Charles H. Moorefield, State Highway Engineer, attached to the answer and made a part of it, and to which we shall more specifically hereafter refer.

The plaintiff demurred to the answer and supporting affidavit on the ground that, for the various reasons alleged in the demurrer, the facts stated did not constitute a defense or legally justify the condemnation of the "excess" strip of land.

There is only one question involved in this action: Has the Spartanburg County Highway Commission the authority to condemn a right of way of the width of 66 feet through the land of a landowner, when the width of the traveled roadway to be constructed, between outer side-ditch banks, is only 36 feet?

The plaintiff admits that the Commission is vested by law with authority to condemn property for necessary rights of way, in the location, relocation, and improvement of roads of the County, but asserts that it enjoys this power to the extent only of condemning what is reasonably necessary for such purposes and uses.

It is well-established law that necessity, as well as public use, must always exist in order to warrant the taking of lands, through condemnation, by a grantee of the power of eminent domain. The delegation of the right to exercise that power carries with it the implied condition that it shall be exercised only to the extent found necessary.

As to what is meant, in this connection, by the term "necessity," we find the following in 20 C. J., at page 630: "Necessity * * * does not mean an absolute but only a a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit. * * *"

The plaintiff contends that no reasonable necessity is shown or exists for the taking of more of his land, making proper allowances for drains and ditches, than is actually required in the construction and relocation of the traveled roadway; that the public will derive no benefit therefrom, while he will suffer great inconvenience and damage thereby. In answer to this, as showing some of the principal considerations that enter into the determination of the necessary width of the right of way of a highway, Mr. Moorefield, in his affidavit filed in the case, makes the following averments:

"(a) The exigencies of construction and maintenance operations of all highways frequently require the occupancy of areas outside the traveled roadway by forces of the Highway Department and its contractors, as, for example, the storage of construction or repair materials, the erection of direction and warning signs, provision for adequate drain-

age both during construction and to take care of subsequent property development.

"(b) Accidents to highway traffic according to his belief, based on experience, may be materially reduced in number by keeping clear of all obstructions to the view of vehicle operators a reasonable right of way strip each side of the traveled way. Abutting property owners may now legally construct driveway entrances into the State Highways at any point and accidents are frequent where such entrances occur near structures that are close up against the roadway. Furthermore, some accidents have occurred where pole lines carrying telephone, telegraph or power wires have blown down on the roadway, and unless the Highway Department controls a strip of land adjacent to the roadbed, it is not practicable for the Department to require such pole lines to be placed back a reasonably safe distance. Similarly, trees in danger of falling on the road may not be removed by the Highway Department from land that it does not control."

The Court is of opinion, from a careful consideration of the question raised, that the plaintiff is not entitled to the relief prayed for.

Traffic conditions within the past 25 years have undergone radical changes. This is an age of increasing travel and rapid transit by motor vehicles, passenger and freight, over the public highways of the state—and beyond. These changes, while regarded as marks of progress and advancement, bring increased dangers to the traveling public. Hence, in the construction and maintenance of roads built, or to be built, the matter of safety and convenience in their use, along with other considerations, is of increasingly vital importance. The attainment of this end necessitates more than the proper construction of the roadbed—it includes as well such control of the highways by the proper road authorities as will enable them to do whatever may be reasonably necessary for the accomplishment of this purpose. It is clear that such control must extend to a right

of way of such reasonable width as will enable the authorities to prevent structures of any kind, such as signboards, filling stations, etc., which tend to obscure the view of travelers and thus increase the hazard of accidents, from being built up to and abutting the roadbed; to insure the removal of trees growing by the roadway when necessary; to prevent encroachments upon, and threatened obstructions to, the roadbed; and to take such other precautionary measures as the circumstances may require.

Under prevailing conditions of present-day travel, the Court is satisfied that a reasonable necessity requires that the right of way shall be of a reasonably greater width than that actually included in the traveled way, and that, in the present case, a right of way 66 feet in width is not excessive, although the roadbed is only 36 feet wide. The Court cannot say that a strip of 15 feet on each side of the roadbed is not necessary to the proper construction and maintenance of the road. Nor does it appear that the plaintiff, as a result of the taking of his land, will suffer the inconveniences and injuries complained of.

In addition, some discretion is vested in the Highway Department in determining the width of the right of way necessary for the proper construction and maintenance of the highway, and, while the Commission is not the sole judge of the necessity of the case, it may exercise its discretion within reasonable limits, and this Court will not interfere, unless bad faith or abuse of discretion is shown. This has not been made to appear in the present case.

The injunction prayed for is refused, and the complaint dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE, and CARTER concur.