222 S.C. 289 (1952)
72 S.E.2d 576
BOOKHART
v.
CENTRAL ELECTRIC POWER COOPERATIVE, INC. (two cases) MOSS
v.
CENTRAL ELECTRIC POWER COOPERATIVE, INC. (two cases) MOSS ET AL.
v.
CENTRAL ELECTRIC POWER COOPERATIVE, INC. (two cases)
16670
Supreme Court of South Carolina.
September 22, 1952.
*290 Messrs. Moss & Moss, and Marshall B. Williams, all of Orangeburg, for Appellants.
*291 Messrs. Brown & Jefferies, of Barnwell, Robert McC. Figg, Jr., of Charleston, and T.B. Bryant, Jr., of Orangeburg, *292 for Respondent.
The order of Judge Henderson follows:
This is a demurrer by the defendant to the plaintiff's complaint on the ground that it fails to state facts sufficient *293 to constitute a cause of action, in that it appears upon the face of the complaint that the defendant, as a cooperative nonprofit membership corporation organized under and for the purpose stated in the Rural Electric Cooperative Act, Code 1942, § 8555-91 et seq., has the right under that act to obtain the right-of-way sought over the plaintiff's lands by condemnation, upon the payment to plaintiff of just compensation for the taking thereof as ascertained in the condemnation proceeding, and the facts alleged in the complaint do not in law entitle the plaintiff to have the defendant enjoined from exercising its said right by means of the procedure prescribed in the statutes of South Carolina in such case made and provided.
It was heard by me on September 28, 1951.
There is no contention by the plaintiff that the proposed power line is to be located in an improper place on this land, or that it is unnecessarily wide, or other objection of a local nature, but, as is accurately stated by counsel for the plaintiff in their excellent written brief, the allegations of the complaint raise the following question: "Under the law of South Carolina when a corporation attempts to exercise the power of eminent domain, can a landowner challenge the right of the corporation to exercise that power on the ground that no public necessity exists for the construction of the project?"
In considering a complaint for the purpose of passing upon a demurrer, while of course the facts which are well pleaded are deemed to be true, the demurrer does admit conclusions of law. Spigner v. Provident Life and Accident Insurance Company, 148 S.C. 249, 146 S.E. 8; Henderson v. McMaster, 104 S.C. 268, 88 S.E. 645.
Many of the matters involved in the complaint have already been passed upon by the Supreme Court in the appeal in the case of Bookhart against this defendant. 219 S.C. 414, 65 S.E. (2d) 781.
*294 It is clear that a landowner has a right to go to the court of equity for relief if a condemnor attempts to make an unreasonably hurtful location of the power line on his property such as by going through shade trees surrounding the residence, when that could be avoided. Seabrook v. Carolina Power and Light Company, 159 S.C. 1, 156 S.E. 1.
Also the Court will prevent the taking of an unnecessarily wide right-of-way. White v. Johnson, 148 S.C. 488, 146 S.E. 411.
However, in my opinion, the question of the public necessity of constructing the project as a whole is a legislative or political one, and not subject to review by the Courts, in the absence of fraud, bad faith, or clear abuse of discretion on the part of the condemnor.
At 29 C.J.S., Eminent Domain, § 89, page 882, we find the following:
"The legislature may delegate the power of determining the necessity of exercising the power of eminent domain to public officers or boards or to private corporations vested with the power of eminent domain, and in the absence of any statutory provision submitting the matter to a court or jury the decision of the question of necessity lies with the body of individuals to whom the state has delegated the authority to take. Generally, a determination by the grantee of the power is conclusive and is not subject to judicial review, in the absence of fraud, bad faith, or clear abuse of discretion."
Also see 18 A.J. 734, and Lewis on Eminent domain, Vol. 2, sec. 597.
This defendant has been given authority by the General Assembly to condemn rights-of-way. Code, § 8555-93. See also South Carolina Electric & Gas Co. v. South Carolina Public Service Authority, 215 S.C. 193, 54 S.E. (2d) 777.
Judging from the foot-notes, and the many additional cases in the pocket part, the principle laid down in 29 C.J. *295 S., Eminent Domain, § 89, page 882, seems to be the almost universal rule and I do not think that the South Carolina cases are to the contrary. These cases deal with the question of the location of the right-of-way as it crosses the plaintiff's land, and not with the public necessity or expediency of the project as a whole.
In Riley v. Charleston Union Station Company, 71 S.C. 457, 51 S.E. 485, the Court did not question the necessity for the building of a railway station in Charleston, but the point considered was its location, whether on the land of the plaintiff or on lands of other persons.
Hutchison v. York County, 86 S.C. 396, 68 S.E. 577, was a case where there was already a highway connecting the same communities. The plaintiff contended that the old route was adequate. There was involved a question of location.
Sanders v. Luther, 164 S.C. 105, 162 S.E. 70, also had to do with the re-location of an existing road, this one in Beaufort County.
The delegation by the State of this great power of eminent domain does not mean that a condemnor is given a free rein, to run rough shod over the lands of the citizens of the State. The Courts will always jealously safeguard the right of landowners against a wrongful method in laying out the right-of-way across their particular tracts of land, but when it comes to the wisdom, or expediency, or reasonable public necessity of the entire project, the department of government through which the State speaks is its legislature, and if such power has been delegated, the condemnor must act in good faith and not in a capricious or wantonly injurious manner.
As an example, if the General Assembly should authorize a railroad company to construct a line of railway from Charleston to Columbia and should delegate to it the right of eminent domain for that purpose, I do not think that the judicial department of the State government could step in *296 and hold up its hand and say that the entire project is unwise and not reasonbly necessary in the public interest. The General Assembly determines the public necessity of the undertaking as a whole; the Court protects the citizen from bad faith or fraud on the part of the condemnor to whom the State has delegated this far-reaching power.
There are many conclusions of law set forth in the complaint, and also many conclusions of inferences of fact. It should be noted that paragraphs 9 and 10 are in the alternative. Paragraph 9 alleges that the defendant has never made a finding of fact as to the necessity for the proposed power line. Paragraph 10 says, "If the defendant has ever made any determination that any necessity exists," it is false and fraudulent. Under the principle governing alternative allegations, this does not amount to an allegation that no such finding was made. Daniels v. Berry, 148 S.C. 446, 466, 146 S.E. 420; 41 A.J. 317, section 41; 71 C.J. S., Pleading, § 41, page 109.
As to paragraph 10, the allegation that the finding of necessity has no basis in fact is merely a conclusion. Such conclusions are not admitted by a demurrer. Oliveros v. Henderson, 116 S.C. 77, 106 S.E. 855; McLeod v. Southern Railway Company, 188 S.C. 14, 198 S.E. 425; Duncan v. McCormick County, 192 S.C. 216, 6 S.E. (2d) 265.
Nor is the plaintiff's conclusion that the finding by the defendant was false and fraudulent admitted by the demurrer. It is essential that the facts and circumstances which constitute fraud should be set out clearly. State v. Jaques, 65 S.C. 178, 43 S.E. 515; Drennan v. Brown, 112 S.C. 340, 100 S.E. 75; Steele v. Kirven, 120 S.C. 88, 110 S.E. 837.
The allegation that the finding constitutes an abuse of discretion is merely a conclusion or inference of fact by the pleader. No facts are set forth in this paragraph to substantiate the statement. As shown by the case of South Carolina *297 Electric & Gas Co. v. South Carolina Public Service Authirity, above, the facts which are alleged in other paragraphs of the complaint, especially paragraphs 6, 7 and 8, as to the building of the power line into Elloree, do not as a matter of law constitute an abuse of discretion. Bank of Fort Mill v. Rollins, 217 S.C. 464, 61 S.E. (2d) 41; 71 C.J.S., Pleading, § 261, page 525.
As to the allegation that the determination of necessity was made for the personal benefit of the defendant, no facts are alleged in paragraph 10. If we turn to paragraphs 6, 7 and 8, and other paragraphs of the complaint, the facts there alleged indicate no personal benefit to the defendant, or that it is doing other than to carry out the purposes for which it was organized, and its contract duties, as set forth in the South Carolina Electric & Gas Co. case, above. This, then, is a mere conclusion or inference, and not based on alleged facts; and so is not admitted by the demurrer.
It Is Accordingly ordered that the demurrer of the defendant to the plaintiff's complaint be and the same hereby is sustained, and the complaint is dismissed.
The order of Judge Brailsford follows:
The plaintiffs, who are the owners of certain farm and timber lands, seek in this action to obtain an injunction restraining the defendant, a corporation organized under the Rural Electric Cooperative Act, Sections 8555-91 et seq., of the Code of Laws of 1942, from condemning a right-of-way over such lands for the construction of an electric transmission line, in a condemnation proceeding which it has commenced for that purpose.
The complaint alleges that the proposed transmission line is a high voltage trunk line designed for the purpose of conducting electric power in wholesale quantities to the area, section and community in and around the town of Elloree where the line will terminate; that this area, section and community is now, and has been for some time, adequately served and supplied with electric power sufficient to meet all *298 present needs and all needs which may arise in the foreseeable future; that the proposed line will not supply electric energy to any of the defendant's members, governmental agencies, political subdivisions, or other persons who do not have an adequate supply of electric energy available to meet all present and future needs, and will not give as good service as existing facilities; and that no necessity exists for the construction of said line and for the condemnation of plaintiff's land.
The complaint also alleges that the defendant has entered into contracts with South Carolina Public Service Authority which preclude the defendant from selling power in the area, section and community to anyone other than Tri-County Electric Cooperative, Inc.; that the use of the line over and above service to such cooperative will be controlled by the said Authority; and that the defendant is attempting to condemn the right-of-way for a private use, in that the public generally will have no definite and fixed use of the line independently of the will of the defendant and the Authority, since the Authority has full discretionary power in fixing its rates and choosing its customers.
The defendant filed a demurrer to the complaint, on the ground that the same fails to state facts sufficient to constitute a cause of action in that it appears upon the face of the complaint that the defendant, organized under and for the purposes and with the powers and functions set forth in the Rural Electric Cooperative Act, has the right under that Act to obtain by the exercise of its power of eminent domain the right-of-way sought over the lands of the plaintiffs upon the payment to the plaintiffs of just compensation for the taking thereof as ascertained in the condemnation proceeding referred to in the complaint, and that the facts alleged in the complaint do not entitle the plaintiffs to an injunction preventing the exercise of such power in the condemnation procedure prescribed in the Statutes in such case made and provided.
*299 The matter has been fully argued before me by counsel for the parties; and, in my opinion, the demurrer should be sustained.
The plaintiffs do not challenge the necessity for a right-of-way over their lands if the transmission line is to be built. Their contention is that, because of the existence of other electrical service available in the Elloree area, there is no necessity for the construction by the defendant of its transmission line thereto, and hence that public necessity for the exercise of its power of eminent domain for such construction is lacking. The question thus raised is a legislative or political one, which is not subject to determination or review by the courts in the absence of fraud, bad faith or clear abuse of discretion on the part of the condemnor. 29 C.J.S., Eminent Domain, § 89, page 882; 18 Am. Jur. 734; Lewis, Law of Eminent Domain, section 597.
In 29 C.J.S., Eminent Domain, § 89, page 882, the applicable principle is thus stated:
"The legislature may delegate the power of determining the necessity of exercising the power of eminent domain to public officers or boards or to private corporations vested with the power of eminent domain, and in the absence of any statutory provision submitting the matter to a court or jury the decision of the question * * * lies with the body of individuals to whom the state has delegated the authority to take. Generally, a determination by the grantee of the power is conclusive and is not subject to judicial review, in the absence of fraud, bad faith, or clear abuse of discretion."
The complaint contains allegations that "the defendant is falsely pretending that a public necessity exists for the construction of its proposed power line," and that "no facts exist which create a public necessity for the construction of defendant's proposed power line and the false pretence by the defendant that such necessity does in fact exist is made for the purpose of affording the defendant a colorable right to exercise the power of eminent domain, is an effort on the *300 part of the defendant to fraudulently deprive plaintiffs of their property, is an effort to acquire plaintiffs' property for its personal benefit as distinguished from any public benefit arising out of any existing necessity to satisfy the needs of the public for electric power in the area to be served by the said line, constitutes an abuse of the discretion confided in the defendant by applicable statutes, and constitutes a taking of the plaintiffs' property without due process of law."
These allegations are conclusions of law or fact, not admitted by a demurrer, and at most merely characterize the facts set forth in the complaint, which, however, must in themselves show fraud, bad faith, or clear abuse of discretion.
As a cooperative, nonprofit, membership corporation, organized under the Rural Electric Cooperative Act, the defendant has the corporate purpose "of supplying electric energy and promoting and extending the use thereof in rural areas", Section 8555-92, and has the power under the Act to construct, maintain and operate electric transmission lines, and to exercise the power of eminent domain to obtain rights-of-way therefor, Section 8555-93 (k, 1).
"Rural area" is defined as "any area not included within the boundaries of any incorporated or unincorporated city, town, village, or borough having a population in excess of twenty-five hundred (2,500) persons". Section 8555-121 (a).
The Act does not limit the authorized activities of the defendant to rural areas not having existing electric service; it indicated a contrary intention by providing that cooperatives organized under it shall be exempt in all respects from the jurisdiction and control of the Public Service Commission. Section 8555-118.
The complaint does not allege that the area into which the transmission line is to be constructed is not a rural area, as so defined; or that the defendant can carry out its corporate purpose of promoting and extending the use of electric *301 energy in such area without constructing the line; or that the electric service presently available in the area is rendered under a franchise which is exclusive as against the defendant.
The defendant having the legal right to enter the area to engage in the performance of the purpose for which it was organized, the question whether it should do so in view of the existing electric service with which it will necessarily have to compete was for its determination, and the facts alleged in the complaint are insufficient to authorize or support a finding of fraud, or bad faith, or clear abuse of discretion on its part in making such determination.
The allegation that the condemnation of the right-of-way is for a private use because of the defendant's contracts with the South Carolina Public Service Authority is clearly untenable. It is settled that the defendant's corporate purpose is a public one, and that the exercise of its power of eminent domain to obtain a right-of-way for its transmission line is for a public use. Bookhart v. Central Electric Power Cooperative, Inc., 219 S.C. 414, 65 S.E. (2d) 781. The Act gives the defendant broad authorization to contract in reference to its transmission system, Section 8555-93 (h), and the Authority has the power to contract with the defendant for use of such system to deliver the electric energy produced by it to its customers, license to do which it has in the act creating it, "the highest kind of certificate of public convenience and necessity." South Carolina Electric & Gas Co. v. South Carolina Public Service Authority, 215 S.C. 193, 54 S.E. (2d) 777, 783. Furthermore, it is not alleged in the complaint that more land is required to be taken by the defendant because of its contractual arrangements with the Authority, and the use of its line by the latter. Compare McMeekin v. Central Carolina Power Co., 80 S.C. 512, 518, 61 S.E. 1020, 128 Am. St. Rep. 885.
It is therefore ordered, adjudged and decreed, that the defendant's demurrer to the complaint herein be, and the same hereby is, sustained, and the complaint is dismissed.
*302 September 22, 1952.
PER CURIAM.
This appeal arises from six cases instituted in the Courts of Common Pleas of Orangeburg and Calhoun Counties, the two Bookhart cases in Orangeburg County and the four Moss actions in Calhoun County. By consent of counsel and with the approval of this Court, only the complaints in the Bookhart case, the James M. Moss and the E.C. Moss cases are incorporated in the record, it appearing that the complaints in the other cases are substantially the same. The Bookhart case and the James M. Moss case were heard (on Demurrer) by Judge Henderson, it appearing that there was no Circuit Judge in the First Circuit at that time and; the demurrers in the other cases by Judge Brailsford, Resident Judge. The demurrers were identical and were sustained in each instance for failure to state causes of action.
The actions all seek to enjoin the respondent, Central Electric Power Cooperative, Inc., from condemning a right-of-way across the lands of appellants for the purpose of constructing an electric power transmission line.
Appellants note twelve exceptions in the record, but in their brief, state the appeal presents only two questions, namely: "The basic issues involved in these cases are: First, do any of the Complaints state facts from which it may reasonably be inferred that no public necessity exists for the construction of the proposed power line; and second, does the E.C. Moss et al., Complaint state facts from which it reasonably may be inferred that the proposed power line will be devoted to a private use."
In our view the Circuit Decrees properly and adequately dispose of these questions in sustaining the several demurrers.
All exceptions are accordingly overruled. Let the orders dated Oct. 3, 1951 (by Judge Henderson) and Nov. 17, 1951 (by Judge Brailsford) be published as together constituting the affirming opinion of this Court in all of the cases.